**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| In re: | Case No. 19-52578-CAG |
| Arete Healthcare, LLC, *et al.*[1] | Chapter 11 |
| Debtors. | Jointly Administered |
| Arete Creditors Litigation Trust,[2] Plaintiff | |
| v. | Adv. Case No. 21-05079-CAG |
| TriCounty Family Medical Care Group, LLC d/b/a Tejas Urgent Care, Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE CRAIG A. GARGOTTA:

COMES NOW the Arete Creditors Litigation Trust ("Plaintiff") by and through its undersigned counsel to hereby respond in opposition ("Response") to the *Defendant's Motion to Dismiss Under FRCP 12(b)(1) for Lack of Subject Matter Jurisdiction and Motion to Dismiss under FRCP 12(b)(6)* [Adv. Doc. 19] ("Motion") and accompanying *Defendant's Brief in Support of Motion to Dismiss Under FRCP 12(b)(1) for Lack of Subject Matter Jurisdiction and Motion to Dismiss Under FRCP 12(b)(6) Plaintiff's Amended Complaint* [Adv. Doc. 20] ("Brief") filed by TriCounty Family Medical Care Group, LLC d/b/a Tejas Urgent Care ("Defendant"), stating the following:

---

[1] The Debtors also include The Emergency Clinic of Floresville, LLC ("ECF") and Schertz-Cibolo Emergency Center, LLC ("SCEC"). The term "Debtor" shall refer to Arete Healthcare, LLC, while the term "Debtors" shall refer to all the debtors in this bankruptcy case.

[2] The Trustee of which is one Mr. Matthew Dundon, <u>not</u> Daren Brinkman, as erroneously stated in the Motion.

## SUMMARY

1. Plaintiff states the following points in its Response:

    i. The Plan retained this cause of action when it retained all preference and fraudulent transfer actions under chapter 5 of the Bankruptcy Code and Texas State Law;

    ii. Plaintiff brings its action against the Defendant and not Brian Johnson or WM Medical Consultants, LLC, and Defendant received no release under the Plan;

    iii. Plaintiff demonstrated due diligence in its Complaint;

    iv. The transfers in the Complaint constitute preferential transfers on account of antecedent debt, or they satisfy the elements of Bankruptcy Code § 548 and TUFTA to the extent that Defendant contends that there was no antecedent debt being satisfied by these transfers; and

    v. The transfers described in the Complaint deserve to be recovered for the benefit of the Estate.

## ARGUMENT

2. The Trust hereby incorporates by reference the Trust's *Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. § 547, 548, 550 and TUFTA* ("Complaint") [Adv. Doc. 10] including all procedural and factual allegations. Any capitalized terms not defined herein shall have the same meaning attributed to them in the Complaint.

### I. The Standard on a Motion to Dismiss Requires the Court to Accept the Factual Allegations in the Complaint as True

3. As the Motion ably points out, the standard on a motion to dismiss is favorable to Plaintiff. Indeed, the Court must only find that the claims in the Complaint have "facial plausibility" in order to overrule the Motion. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). While

conclusory allegations are not sufficient, courts "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. . . . even if doubtful in fact." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F/3d 673, 675 (5th Cir. 2007), internal quotations and citations omitted. Motions to dismiss are rarely granted because courts strongly favor that cases be decided on their merits. Plaintiffs are not put to proof at the motion to dismiss stage.

II. **The Plan Retained All Causes of Action in the Complaint When It Retained All Preference and Fraudulent Conveyance Claims**

4. The Debtors' Plan of Reorganization provides, in pertinent part:

> The Reorganized Debtors shall retain… and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date… **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.**

(Plan, p. 37, Section 4.13 "Preservation of Causes of Action," bold text in original).

5. Also:

> The Debtors hereby preserve the following claims and causes of action… All claims asserted or unasserted, including but not limited to… claims for any avoidance remedy including fraudulent conveyances under Texas law, and all claims under chapter 5 of title 11, United States Code, whether, [sic] known or unknown against… Any transferee of any avoidable transfer whether or not now made subject to any avoidance action against an Insider.

(Plan. P. 38, Section 4.13(1)(c)). The Disclosure Statement repeats this language in Exhibit 6.

6. The Plan clearly retains the causes of action enumerated in the Complaint and all parties in interest were on notice by virtue of the Disclosure Statement and Plan itself. The retention language in the Plan was sufficiently "specific and unequivocal" to retain the right to pursue the causes of action asserted in the Complaint. *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008). The Motion seems to claim that a specific listing of potential

defendants and/or potential transfers that may be subject to avoidance was required to retain the causes of action but this is not the law in the Fifth Circuit. Indeed, the Fifth Circuit Court agreed that a "plan's categorical reservation of 'preference' claims was sufficiently specific; plan need not itemize individual transfers that may be pursued as preferential." *Id.* (summarizing with approval the holding in *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 337-38 (Bankr. D. Conn. 2005)).

7. The *In re Crescent Res., LLC* case, cited in the Motion, is particularly instructive on the sufficiency of the Plan's retention of causes of action. 463 B.R. 423 (Bankr. W.D. Tex. 2011). After engaging in "an exhaustive discussion of the relevant case law on this issue," including the *United Operating* and *Ice Cream* cases, this Court "agree[d] with the reasoning behind those cases applying what has been referred to as the 'Categorical Approach' …." *Id.* at 437. The *Crescent Res., LLC* Court ultimately concluded that the plan language in that case preserving "Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551 against any Person or Entity" was sufficient to preserve all Chapter 5 causes of action against all potential defendants. *Id.* at 427 (quoting the plan language), and 439 (holding that the language was specific and unequivocal).

8. Here, the Plan specifically and unequivocally preserves Chapter 5 causes of action and those under Texas state law against all statutory insiders, including Defendant. Therefore, the Defendant's assertion that Plaintiff did not have standing because the Plan did not retain these causes of action is wrong, and Plaintiff has standing.

### III. **Plaintiff Brings Its Action Against the Defendant, An Insider, and Not Brian Johnson or WM Medical Consultants, LLC**

9. Neither Brian Johnson nor WM Medical Consultants, LLC are parties to this suit. They are not named Defendants, and neither was, in their individual capacity, served summons. The Defendant is TriCounty Family Medical Care Group, LLC d/b/a Tejas Urgent Care, a Texas Limited Liability Company. (Complaint, p. 4, ¶ 19). The Plan states: "As a condition to and in consideration for the new value provided by Brian Johnson and WM Medical Consultants, LLC, each will receive a full and final release of all pre- and post-petition claims arising up to the date of the confirmation of the Plan." (Plan, p. 42, Section 5.6). Although Brian Johnson, in his individual capacity, and WM Medical Consultants, LLC did receive releases under the Plan, the Defendant did not and therefore falls within the purview of causes of action preserved in the Plan. See *Supra*.

10. Furthermore, while it is arguably not material at the motion to dismiss stage, Defendant is a statutory insider, contrary to the argument in the Brief. (Brief, p. 11, Third Cause for Dismissal, section D). An "insider" includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E). An affiliate, in turn, is a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor…" 11 U.S.C. § 101(2)(B). An entity "includes person…" 11 U.S.C. § 101(15). Finally, "[t]he term 'person' includes individual, partnership, and corporation…" 11 U.S.C. § 101(41). Therefore, the fact that Brian Johnson (an individual) and/or his entity WM Medical Consultants, LLC (a corporation) directly owns 20 percent or more of both Arete and Defendant makes them statutory affiliates, and therefore Defendant is an insider of Arete.

11. The following shows ownership as of the Petition Date:



## IV. Plaintiff Pled Sufficient Details Regarding the Preferential Transfers in the Complaint.

### a. Amount of Preferential Transfers in Count I of the Complaint

12. To answer the Defendant's question, the figure of $77,476.88 is arrived at by adding $55,076.88 and $19,400. (Complaint, p. 6-7, ¶ 31-2). The details of the $19,400 are shown in the Debtor's Statement of Financial Affairs, at 19-52578-CAG Docket No. 77 on page 60, while the details of the $55,076 are shown in in Exhibit B to the Complaint. Id. As stated in the Complaint, these were the totals of Transfers made during the Preference Period. (Complaint, p. 8, ¶ 33).

### b. Arete Paid the Expenses Listed in Exhibit B

13. In Exhibit B to the Complaint, the "Paid by" column denotes the holder of the account. All of the expenses "Paid by" Arete using "Amex" were made with accounts ending in

the numbers denoted in the Exhibit. As stated in the Complaint, each Payment benefited the Defendant because they were paid in satisfaction of the Defendant's expenses. (Complaint. P. 6, ¶ 29). The Management Agreement, which is attached to and part of the Complaint, reveals that Arete was not required to pay Defendant's expenses, so Arete did not get anything in return for paying Defendant's expenses other than satisfaction of the obligation to pay Defendant its share of revenues from the Management Agreement. Therefore, Plaintiff has alleged that the expenses were to or for the benefit of Defendant and that Arete did not receive reasonably equivalent value in return for the transfers. Plaintiff is not required to prove its allegations at this stage; it has adequately alleged a facially plausible claim for relief.

      **c. The Payments Were Made on Account of Antecedent Debt Owing to the Management Agreement between Debtor and Defendant.**

    14.    On information and belief, and based on due diligence conducted by Plaintiff, Debtor and Defendant were parties to a management agreement, whereby Debtor collected on the Defendant's accounts payable and paid them to Defendant after deducting a 3% management fee. Debtor had an antecedent debt to Defendant because of its obligation to pay 97% of accounts receivable collected under the management agreement to Defendant. Out of an abundance of caution, and mainly because Defendant disputes that it had an antecedent debt, the Complaint includes alternative causes of action for fraudulent conveyance under sections 544 and 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Plaintiff brings this alternative theory because Defendant cannot simultaneously argue that there was no antecedent debt obligation being satisfied without clearly laying the foundation for a fraudulent conveyance recovery on the same set of transfers. Either the Management Agreement created an antecedent debt obligation, or all of the elements of a fraudulent conveyance are satisfied

because Debtor would have received no value in exchange for paying Defendant's vendors for the Defendant's benefit.

15. During the bankruptcy case, when Plaintiff's counsel was representing the Unsecured Creditors Committee, Debtor contended that the 97%-3% pass-through arrangement had been the course of dealing leading up to the bankruptcy. During the bankruptcy, it was very clear that Debtor was merely passing through these receivables to Defendant, while retaining the 3% amount under the management agreement. It only became apparent to Plaintiff's counsel as its post-confirmation investigation was under way, that this had not been the course of conduct prior to bankruptcy. Plaintiff's counsel began probing for all of the expenses of the Defendant that had been paid by Debtor as part of its due diligence investigation. Plaintiff's counsel had conference calls with Debtor's counsel and various employees of the Debtor. Brian Johnson himself was on the phone during many of these meetings with other employees of the Debtor. However, even though Brian Johnson, a principal of the Debtor and Defendant, had a fiduciary duty to the estate to cooperate in the investigation of potential preference and fraudulent conveyance actions, the cooperation stopped once it became apparent that Defendant might become a target for adversary proceedings. Plaintiff was left with many questions unanswered as the deadline to bring adversary proceeding was approaching, and no time to make a FRBP 2004 examination.

16. Plaintiff is informed and believes that there were further transfers that it could not plead with sufficient specificity to include in its Complaint. Parties representing the Debtor had even at one point mentioned that Defendant's payroll was being paid by the Debtor, but in an abundance of caution, Plaintiff did not include these transfers in its prayer for relief, choosing to await proper discovery instead. It is ironic that Brian Johnson, who had access to all of Debtor's

financial information, and a fiduciary duty to cooperate with Plaintiff's investigations, should now accuse Plaintiff of not having sufficient information from the Debtor to bring this action. Defendant should not be able to benefit from its own principal's obstructionist tactics.

### d. The Complaint Evidences Due Diligence Performed by the Plaintiff with Respect to Its Claim

17. The Bankruptcy Code provides that a trustee may avoid a preferential transfer "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)." 11 U.S.C. § 547(b). However, as Collier states, "it is unclear whether the 'reasonable due diligence' requirement is an element of the preference claim." 5 Collier on Bankruptcy P 547.02A (16th 2021).

18. In a similar scenario in the Southern District of Texas, the Court denied a motion to dismiss on the same grounds, finding that the "Trustee's Complaint contains sufficient information regarding the reasonable due diligence prong of § 547(b) to survive dismissal." Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC), Nos. 18-32414, 20-3094, 2020 Bankr. LEXIS 3547, at *20 (Bankr. S.D. Tex. Dec. 21, 2020). The court found that "the Complaint demonstrates that Trustee reviewed [Debtor]'s bank and wire records, invoices relating to the [transfer], correspondence, and the contract between [Debtor's business partner] and [Debtor]. Additionally, Trustee mapped out the alleged structure of the parties' relationships in the Complaint." Id. Here, Plaintiff has pled with similar specificity, showing details as to the relationship between the Defendant and the Debtor, and specific transfers that were made to the Defendant by the Debtor.

### V. Plaintiff Pled Dates and Amounts of Transfers with Sufficient Specificity to Constitute a Claim for Relief

19. The complaint states specific dates on which the Payments and Transfers began and ended, with very specific amounts to which they totaled. (Complaint, p. 6-7, ¶ 29-33). In addition, the details of the Payments and Transfers are listed in Exhibit B to the Complaint. Exhibit B was compiled from copies of receipts that were provided to the Plaintiff by the Debtor as the expenses paid by Debtor for Defendant in consideration for its services under the Management Agreement.

**VI.** **Because Plaintiff Pled Viable Claims Under Bankruptcy Code §§ 544, 547, 548 and TUFTA, the Avoidable Transfers Should Be Recovered Under § 550.**

20. Owing to the fact that Plaintiff has pled all causes of action with sufficient specificity to survive the Motion, it should be allowed to proceed with Counts 1-4 of its Complaint, and thereby recover the preferential and fraudulent transfers on behalf of the Estate under Bankruptcy Code § 550.

## CONCLUSION

WHEREFORE the Plaintiff hereby requests that the Court deny the Defendant's Motion, find that the Court has subject matter jurisdiction over this proceeding, and the Plaintiff has adequately stated claims upon which relief can be granted.

Respectfully submitted this 15th day of November, 2021.

                                            s/ Daren Brinkman
                                            Daren R. Brinkman (03004490)
                                            Brinkman Law Group, PC
                                            543 Country Club Drive, Suite B
                                            Wood Ranch, CA 93065
                                            Tel. (818) 597-2992
                                            Fax (818) 597-2998
                                            firm@brinkmanlaw.com

                                            *Counsel for the Arete Creditors Litigation Trust*

## CERTIFICATE OF SERVICE

I, Daren Brinkman, hereby certify that I have served a true and correct copy of the foregoing *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS* by filing it with the Bankruptcy Court's electronic filing system pursuant to FRCP 5(b)(2)(E) and Local Rule 7005 upon the following parties:

**Dean William Greer**
dean@dwgreerlaw.com; deangreernotices@gmail.com; deangreernotices2@gmail.com

Respectfully submitted this 15th day of November, 2021.

s/ Daren Brinkman
Daren R. Brinkman