

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 07, 2022.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 19-52578-cag |
| ARETE HEALTHCARE LLC, | § | |
| *et al.*, | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | |

| | | |
|---|---|---|
| ARETE CREDITORS LITIGATION TRUST, | § | |
| Plaintiff, | § | ADVERSARY NO. 21-05079-cag |
| v. | § | |
| TRICOUNTY FAMILY MEDICAL CARE | § | |
| GROUP, LLC | § | |
| d/b/a Tejas Urgent Care, | § | |
| Defendant. | § | |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER FRCP 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6) PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 19) AND GRANTING LEAVE TO AMEND

Came on for consideration Defendant's Motion to Dismiss under FRCP 12(b)(1) for Lack

of Subject Matter Jurisdiction and Motion to Dismiss under FRCP 12(b)(6) Plaintiff's Amended

Complaint ("Motion to Dismiss") (ECF No. 19) filed by TriCounty Family Medical Care Group, LLC ("TriCounty" or "Defendant") on November 1, 2021. The Court held a hearing on the matter on January 13, 2022. The Court took the matter under advisement at the hearing. Having considered the arguments presented and the applicable law, for the reasons explained herein, the Court finds that the Motion to Dismiss should be DENIED. The Court will also GRANT Arete Creditors Litigation Trust's ("Trust" or "Plaintiff") request for leave to amend.

JURISDICTION

As a preliminary matter, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (F), and (H). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This case is referred to this Court by the Standing Order of Reference entered in this District.

FACTUAL AND PROCEDURAL BACKGROUND

**The Underlying Bankruptcy Case**

Arete Healthcare, LLC ("Arete") filed its petition for Chapter 11 bankruptcy relief on November 3, 2019. (Bankr. Case No. 19-52578, ECF No. 1). The Emergency Clinic of Floresville, LLC (Bankr. Case No. 19-52579, ECF No. 1), Schertz-Cibolo Emergency Center, LLC (Bankr. Case No. 19-52580, ECF No. 1), and Southcross Hospital, LLC (Bankr. Case No. 19-52581, ECF No. 1) also filed their respective petitions for Chapter 11 bankruptcies on the same day. The Court ordered the four cases to be jointly administered on November 7, 2019 under case number 19-52578. (ECF No. 24). Southcross Hospital, LLC's case was converted to a Chapter 7 bankruptcy on March 23, 2020. (Bankr. Case No. 19-52581, ECF No. 1). Because the bankruptcies for Arete Healthcare, LLC; Emergency Clinic of Floresville, LLC; and Schertz-Cibolo Emergency Center, LLC remain jointly administered, references and citations to underlying bankruptcy case are to

case number 19-52578. The Court will refer to the entities collectively as "Debtor" or "Debtors" and the Court will use the individual entity's name if referring to one specifically.

Debtors filed Debtor's Second Amended Joint Plan of Reorganization (ECF No. 252) ("Plan") on May 28, 2020. Along with the Plan, Debtors filed a Second Amended Disclosure Statement in Support of Joint Plan of Reorganization of Arete Healthcare, LLC; Schertz-Cibolo Emergency Center, LLC And The Emergency Clinic of Floresville, LLC Under Chapter 11 of the United States Bankruptcy Code (ECF No. 251) ("Disclosure Statement"). Together, in pertinent part, the Plan and Disclosure Statement contain language identifying causes of action Debtors seek to preserve post-confirmation. (ECF No. 252, at 30–33; ECF No. 241, at 35–36). The Disclosure Statement also references, but does not attach, the Debtor's Statement of Financial Affairs (ECF No. 77) ("SOFA"). (*Id.*). Question 3 of the SOFA concerns transfers the Debtors made within 90 days of the petition for relief. Debtors attached a list of such transfers to the SOFA as Exhibit 6. (ECF No. 77, at 59–63). The SOFA identifies two transfers to TriCounty. (*Id.* at 60).

The Trust was established pursuant to the Plan and a Litigation Trust Agreement. (ECF No. 311). The purpose of the Trust is to liquidate and distribute assets. (*Id.* at 7).

The Plan also provided releases for Brian Johnson and WM Medical Consultants, LLC. (ECF No. 252, at 42).

The Court confirmed the Plan on August 14, 2020. (ECF No. 343).

**This Adversary Proceeding**

The Trust initiated this adversary proceeding on June 28, 2021 by filing its Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. § 547 and 550 [sic] (ECF No. 1) ("Complaint"). The Trust accomplished service on TriCounty on August 13, 2021 (ECF No. 7). TriCounty then filed its first motion to dismiss and a brief in support (ECF Nos. 8 and 9). The

3

Trust then amended its Complaint pursuant to Federal Rule of Bankruptcy Procedure 7015 and filed Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 544, 547, 548, 550 and TUFTA (ECF No. 10) ("Amended Complaint"),which is the operative complaint.

The Amended Complaint pleads four main causes of action: preferential payments, fraudulent transfers under the Bankruptcy Code, fraudulent transfers under Texas law, and recovery of avoided transfers. (ECF No. 10, at 1). Exhibit A of the Amended Complaint is a Management Agreement. (*Id.* at 13–34). The Management Agreement identifies TriCounty as a "Management Company" and Arete as a "Clinic." Both parties agree that the Management Agreement reverses the relationship of the entities. (ECF No. 10, at 5; ECF No. 20, at 8). The Court will analyze the Management Agreement as if it correctly stated the relationship: TriCounty is the clinic; and Arete is the management company.[1] Under the Management Agreement, Arete provided management services to TriCounty, including paying vendors. (ECF No. 10, at 14–16). In return, TriCounty paid Arete a fee. (ECF No. 10, at 18–19).

Exhibit B is a chart that the Trust alleges details payments Arete made on TriCounty's behalf pursuant to the Management Agreement. (ECF No. 10, at 35–43). Exhibit B identifies only the vendors who received payment, not goods or services the payments covered. (*Id.*). Many of the payments seemingly are not authorized by the Management Agreement. For example, Exhibit B includes payments for Charlie Allen's Burgers, hotel stays, TX Tag tolls, Jim's Crispy Fried Chicken, Twin Liquors, Smoothie King, and others. (*Id.*).

TriCounty then filed its second Motion to Dismiss under FRCP 12(b)(1) for Lack of Subject Matter Jurisdiction and Motion to Dismiss under FRCP 12(b)(6) and its brief in support

---

[1] The Motion to Dismiss argues this mistake is grounds to dismiss the Amended Complaint. (ECF No. 20, at 8). The Court will not deem a nomenclature mistake in a document executed several years before the Amended Complaint was filed fatal when both parties agree upon the proper relationship.

(ECF Nos. 19 and 20) (collectively "Motion to Dismiss"). The Trust filed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (ECF No. 23) ("Response"). The Response was a day late.[2] No reply was timely filed.

## ANALYSIS

### I.    Standing

As a threshold matter, the Court must address TriCounty's argument that the Trust does not have standing to sue.[3] Standing is a jurisdictional requirement, so the Court must independently ensure the Trust has standing. ***United Operating, LLC v. Citizens Bank (In re United Operating, LLC)***, 540 F.3d 351, 354 (5th Cir. 2008).

#### a.   Legal Standard for Standing

For a reorganized debtor or trustee to have standing to sue post-confirmation, the plan of reorganization must preserve the right of action. ***United Operating***, 540 F.3d at 355. The preservation must be "specific and unequivocal." ***Id.*** Courts may consult the plan's disclosure statement to determine if the claim was properly preserved. ***In re Tex. Wyo. Drilling, Inc.***, 647 F.3d 547, 550 (5th Cir. 2011). Debtors do not need to specifically name potential future defendants, but the plan and related documents must provide some indication of who may become a defendant. ***Id.*** at 552 (concluding that a disclosure statement which identified "[v]arious pre-petition shareholders of the Debtor" as potential fraudulent transfer defendants provided sufficient notice). Disclosure and notice are the policy underpinnings of the standing analysis because they may affect how parties vote on the plan. ***United Operating***, 540 F.3d at 355.

---

[2] The Trust's initial response (ECF No. 21) was filed timely; however, the Court dismissed the response for lack of compliance with the Local Rules. TriCounty did not object to the Response on the basis of timeliness. Therefore, the Court allowed the Motion to Dismiss to proceed.

[3] TriCounty's Motion to Dismiss made its standing argument under Federal Rule 12(b)(1), which addresses subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

**b. Parties' Arguments**

TriCounty argues that the Trust does not have standing to pursue claims against TriCounty because no claim against TriCounty was properly preserved. (ECF No. 20, at 3–4). According to TriCounty, the reorganized debtor listed the causes of action it intended to preserve in the Disclosure Statement. (*Id.* at 3). The Disclosure Statement does not name TriCounty. (*Id.*). The Disclosure Statement references question 3 of the SOFA, but the SOFA is not attached to the Disclosure Statement. (*Id.*). Therefore, the Disclosure Statement is insufficient to put TriCounty on notice of the possibility that they might be sued.

TriCounty further argues that it was not put on notice of these claims specifically. With respect to the alleged preferential payments, TriCounty points out that the Amended Complaint asserts the preferences were made in 2021. (*Id.*). The Court will assume 2021 is a typographical error and use the 2019 dates as reflected in the SOFA. (Bankr. ECF No. 77, at 60). Because the underlying bankruptcy was filed in 2019, the Disclosure Statement could not possibly have put TriCounty on notice of preferential payments in 2021 because the Disclosure Statement predates the alleged preferential payments. (*Id.*). TriCounty also argues that it was not put on notice of the $800 payment listed in the SOFA because the plan provided that the Trust would not assert a claim less than $5,000. (*Id.* at 3–4).

The Trust asserts that it has standing to sue post-confirmation because the "Plan specifically and unequivocally preserves Chapter 5 causes of action and those under Texas state law against all statutory insiders, including the Defendant." (ECF No. 23, at 4).

**c. Claim Preservation**

Section 4.13 of the Plan is titled "Preservation of Causes of Action." (Bankr. ECF No. 252, at 30). The Plan retains the following causes of action:

All claims asserted or unasserted, including but not limited to claims for contract or tort damages, breach of fiduciary duty, and all other claims including claims for any avoidance remedy including fraudulent conveyances under Texas law, and all claims under chapter 5 of title 11, United States Code, whether, known or unknown against:

a.     Joel Kay and all relatives who are statutory insiders as defined by as 11 U.S.C. § 101(31).

b.     Amajon Healthcare Solutions, LLC and all managers, members, directors and officers.

c.     Any transferee of any avoidable transfer whether or not now made subject to any avoidance action against an Insider.

d.     The Debtors also retain all rights to object to claims of non-released Insiders and all rights of offset, recoupment, including any right to bring an action previously barred by any statute of limitations, to the extent such right exists in connection with any response to any action brought against the estate, including the objection to any proof of claim filed by any non-released Insider.

(*Id.* at 31). The Plan also explicitly reserves claims against pre-petition professionals; all prepetition creditors of the Debtors; claims for damages, fraud, or breach of contract; and claims against specifically named entities other than TriCounty. (*Id.* at 32-33).

Section VII.I of the Disclosure Statement, titled "Rights and Causes of Action: Reservation of Rights," states that the

Reorganized Debtors will receive all Causes of Action, Claims, and other rights upon confirmation. Specific, known Causes of Action are set forth at Exhibit 6, and include Claims against the Members of the Debtors, Johnson and Kay. … Fraudulent conveyance and preference actions will be pursued post-petition, as well as collections suits.

(*Id.* at 35–36). Exhibit 6 is titled "Identified causes of Action of the Debtors." (*Id.* at 104). In addition to the language preserving claims against statutory insiders quoted above, Exhibit 6 includes the following reservation:

3.     Claims against all prepetition creditors of the Debtors or any one of them which arise under chapter 5 of title 11, United States Code or State law, including preference actions and fraudulent conveyance claims, including

7

fraudulent conveyance claims at Texas state law.

> a. The Debtor does not intend to assert any claim of preference or fraudulent conveyance under state or federal law upon any claim of less than $5,000.
>
> b. The Debtor does not intend to file any claim of preference against any taxing authority for such are barred by statute.
>
> c. The Debtor does not intend to file any claim for preference where the payments were made in the ordinary course or are otherwise protected by the defenses to preference claims found at 11 U.S.C.§ 547 (c).
>
> d. A complete list of pre-petition payments made within 90 days of the date of the Petitions can be found at the Debtors' Statements of Financial Affairs, Question No. 3. This material is available online through PACER or by written request to Debtor's counsel, Allen M. DeBard, which contact information appears at the end of the Disclosure Statement and at the end of the Plan of Reorganization. The amounts that might be recovered in such actions has not been estimated at this time.

(*Id.* at 105).

Question 3 of the SOFA lists two transactions with TriCounty. The first was on August 9, 2019 in the amount of $18,400. The second was on August 23, 2019 in the amount of $800.

Both the Plan and the Disclosure Statement preserve claims from Chapter 5 of the Code and under Texas fraudulent conveyance law against statutory insiders. Like listing "[v]arious pre-petition shareholders of the Debtor" as potential defendants, *see* ***Tex. Wyo. Drilling, Inc.***, 647 F.3d at 552, identifying statutory insiders is sufficient to put potential insider defendants on notice. Similarly, identifying pre-petition creditors is sufficient to put pre-petition creditors on notice. The Disclosure Statement also references the SOFA, which specifically lists pre-petition payments to TriCounty within 90 days of filing. In other words, TriCounty was named as a potential defendant with respect to the SOFA transfers.

### d. Whether TriCounty is an Insider or Creditor of Arete

Whether TriCounty is an insider or creditor is therefore of utmost importance.[4] If TriCounty is neither an insider nor a creditor, then the Plan and Disclosure Statement did not sufficiently put TriCounty on notice of any claim other than the two transfers listed in the SOFA.

### 1. Insider

An insider, as defined in the Bankruptcy Code, includes an "affiliate." 11 U.S.C. § 101(31)(E). An affiliate means an "entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. § 101(2)(A). This subsection "sets forth the circumstances under which a debtor's parent (or parent-like) entity will be considered an affiliate of the debtor." *In re Reichmann Petroleum Corp.*, 364 B.R. 916, 919–20 (Bankr. E.D. Tex. 2007).

An affiliate can also mean a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with the power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. § 101(2)(B). This subsection describes two distinct relationships. The first clause "reflects a vertical relationship between a debtor and a subsidiary (or subsidiary-like) entity. *Reichmann Petroleum*, 364 B.R. at 920. The second clause "reflects a horizontal relationship between a debtor and another entity which share a common parent (or parent-like) entity, which accordingly justifies treating the debtor and its 'sibling' entity as affiliates." *Id*. The term entity includes persons. 11 U.S.C. § 101(15). The term "corporation" expressly excludes limited partnerships. 11 U.S.C. § 101(9)(B).

---

[4] The Trust has argued that it has standing to sue because TriCounty is an insider of Arete. (*See, e.g.*, ECF No. 10, at 4; ECF No. 23, at 4; Hearing Transcript, at 33). Because the Plan and Disclosure Statement also preserve causes of action against pre-petition creditors, the Court will analyze whether TriCounty is a creditor too.

The Trusts argues that TriCounty is an insider of Arete because Brian Johnson is a principal of both entities. The Trust points out that the definition of an insider includes affiliates, citing Section 101(31)(E). The Trust then recites the definition of an affiliate under Section 101(2)(A). According to the Trust,

> Defendant is owned by an entity (Brian Johnson) that indirectly owns (through WM Medical Consultants, LLC) more than 20 percent of the outstanding securities of all three of the Debtors (50% of Arete, 44.25% of Floresville, and 27.635% of Schertz).

(ECF No. 10, at 5). Therefore, in the Trust's determination, Brian Johnson's status as a principal of both Arete and TriCounty makes the two companies affiliates, which in turn makes the TriCounty an insider of Arete. (ECF No. 23, at 5). The Response also included the following chart to illustrate why it alleges TriCounty is an insider.



(*Id.* at 6). The Trust notably does not argue the sibling relationship created by the second clause of Section 101(2)(B).

TriCounty conversely argues that it cannot, by definition, be an affiliate of Arete. In the Motion to Dismiss, TriCounty argued it was not an insider or affiliate of Arete because it has no ownership interest in Arete and is not an officer, director, person in control, relative, or general partner of Arete. (ECF No. 20, at 11). At the hearing, TriCounty also rebutted the Trust's common principal argument by focusing on voting securities. TriCounty's Counsel argued that if Section 101(2)(A) had meant to include limited partnerships, Congress would not have used the phrase "voting securities" because limited partnerships do not have voting securities. (*See* Hearing Transcript, at 12–13).

Neither party is correct under the circumstances. TriCounty is wrong because none of the entities are limited partnerships; rather, all the entities involved are limited liability companies. The Trust is wrong because common ownership does not create an affiliate relationship. The affiliate definition focuses on who owns, controls, or holds the power to vote at least 20 percent of the *outstanding voting securities* of the debtor, not on ownership interests in the debtor. Ownership interest is not synonymous with voting shares. *See* Tex. Bus. Orgs. Code Ann. § 101.104 (West 2021) (describing how the company agreement can establish voting rights).

The Trust has not presented the Court with any factual information detailing who has what voting power in Arete. In theory, Brian Johnson could own, control, or hold no voting security in any of the entities despite his ownership interests in all the entities. Without pleading how the voting securities of the respective entities are divided, the Court cannot determine whether TriCounty is an insider of Arete.

### 2. Creditor

"Creditors" in bankruptcy are entities that have a claim. 11 U.S.C. § 101(10). A "claim" is a right to payment. 11 U.S.C. § 101(5). The Trust states, "Defendant is creditor as the term is

defined under 11 U.S.C. § 101(10)(A) for being an entity that has a "claim" as defined by 11 U.S.C. § 101(5)(A) and (B) . . . owing to the Management Agreement between the Defendant and Arete." (ECF No. 10., at 6). The Trust further pleads that "Defendant was a creditor of the Debtor at the time of each of the Transfers was made [sic] by virtue of the antecedent debt Debtor owed to Defendant at that time," again referencing the Management Agreement. (ECF No. 10, at 8)

The meager facts pled defy logic. The Management Agreement's plain language negates any contention that the Management Agreement made TriCounty a creditor of Arete. Under the Management Agreement, Arete was responsible for managing TriCounty's business operations. (*See generally id.* at Exhibit A). In return for that service, TriCounty paid Arete a management fee. (*Id.* at 18). Paying a person or an entity to perform a service is the opposite of having a right to payment from that person or entity. If anything, alleging that Arete paid TriCounty's expenses without reimbursement, (*see id.* at 6), suggests that Arete was a creditor of TriCounty, not the other way around. TriCounty did not file a claim in the main bankruptcy, (*see* Bankr. Claims Register), presumably because TriCounty did not believe it had a claim against Arete.

The Trust's theory advanced at the hearing — that Arete and TriCounty disregarded the Management Agreement and Arete paid all TriCounty's expenses instead — also supports the conclusion that TriCounty was not a creditor with a claim against Arete. If Arete paid for TriCounty's expenses, Arete would presumably have a claim against TriCounty.

The Trust has plead no other facts to establish a creditor-debtor relationship between TriCounty and Arete, respectively. The Court, therefore, determines that the facts as plead do not make TriCounty a creditor of Arete. Because TriCounty is not a creditor, the Plan's reservation of claims against pre-petition creditors did not put TriCounty on notice.

### e. The Trust's Standing

In summary, the Court cannot determine whether the Trust has standing to sue TriCounty as an insider because the Trust has not presented the Court with any information regarding which entities have what amount of power to vote Arete's voting securities. The Court cannot find that the Trust has standing to sue TriCounty as an insider based on the facts as currently pled. The Trust does not have standing to sue TriCounty as a pre-petition creditor because TriCounty is not a creditor, and thus TriCounty could not have been put on notice through Debtor's Plan that preserved causes of action against pre-petition creditors. The Court finds that the Trust has standing to sue for the two transactions listed in the SOFA because those transfers were specifically and unequivocally preserved as causes of action.

## II. Motion to Dismiss

The Court must also address whether the Amended Complaint sufficiently pled cause(s) of action.

### a. Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim for relief is plausible on its face "when the plaintiff pleads factual content the allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). "'[D]etailed factual allegations' are not required." *Hershey v. Energy Transfer Partners, LP*, 610 F.3d 239, 245 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Nevertheless, a court should not accept "threadbare recitals of a cause of action's elements supported by mere conclusory statements." *Hershey*, 610

13

F.3d at 245–46 (quoting *Iqbal*, 556 U.S. at 678). In reviewing whether a pleading states a claim

on which relief may be granted, the Court must accept all well-pleaded facts as true and view those

facts in the light most favorable to the plaintiff. ***True v. Robles***, 571 F.3d 412, 417 (5th Cir. 2009).

Though most causes of action are subject to Rule 8(a)'s pleading standard, ***Iqbal*,** 566 U.S.

at 677–78, Rule 9(b) establishes a heightened pleading standard for cases where the plaintiff

alleges fraud. More than plausibility, a plaintiff must plead fraud with particularity. Fed. R. Civ.

P. 9(b). Rule 9(b) requires the plaintiff to "plead the who, what, when, where, and why as to the

fraudulent conduct." ***Life Partners Creditors' Tr. v. Cowley* (*Matter of Life Partners Holdings,***

***Inc.*),** 926 F.3d 103, 117 (5th Cir. 2019) (citing ***Tuchman v. DSC Commc'ns Corp.*,** 14 F.3d 1061,

1068 (5th Cir. 1994)).

### b.  Preferential Payments under Section 547

To state a preferential transfer claim under 11 U.S.C. § 547(b), the Trust must plead,

"based on reasonable due diligence in the circumstances of the case and taking into account a

party's known or reasonably knowable affirmative defenses,"[5] a transfer of an interest of the

Debtor's property that was:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such a transfer was made;
(3) made while the debtor was insolvent;
(4) made
    (A) within 90 days before the date of the filing of the petition; or
    (B) [] within one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) [such that the] payment enables such creditor to receive more than such creditor would if
    (A) the case were a case under Chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[5] Affirmative defenses to a preference action are listed in 11 U.S.C. § 547(c).

11 U.S.C. § 547(b).

### 1. Transfer of an Interest of the Debtor in Property

The Amended Complaint states in Paragraph 38 that "Debtor made one or more transfers to or for the benefit of Defendant during the Preference Period totaling $77,476.88 …." (ECF No. 10, at 8). In its Response, the Trust clarified that the $77,476.88 amount is inclusive of $19,400 worth of transfers set forth the in Debtor's Statement of Financial Affairs ("SOFA") and $55,076.88 in transfers attached in Exhibit B of the Amended Complaint. (ECF No. 23, at 6; *see also* ECF No. 10, at 6–7, Exhibit B).

### A. Miscalculations

The Court notes that the amounts reflected in the Trust's pleadings are inconsistent. The sum of all transactions within a year of the petition date as alleged in Exhibit B is $55,949.49, not $55,076.88. Moreover, while the Trust alleges that the SOFA amounts are "$18,400 and $800, respectively totaling $19,400," (ECF No. 10, at 6), $18,400 plus $800 equals $19,200. Adding $55,494.49 and $19,200 results in a total sum of $75,194.49, not $77,476.88 as stated in the Amended Complaint. The Court will not deem the miscalculations fatal; but arithmetic errors undermine the Trust's ability to sufficiently plead a cause of action.

### B. Transfers in the SOFA

The Amended Complaint alleges that on "August 9 and 23 of 2021"[6] Arete made transfers directly to the Defendant in the amounts of $18,400 and $800 respectively" and cites to the SOFA. (ECF No. 10, at 6).

---

[6] The Motion to Dismiss points out that these dates are "facially incorrect given this is a 2019 bankruptcy case and no prepetition payments could have been made in 2021." (ECF No. 23, at 3). The Court agrees. Because the Court must draw all reasonable inferences in favor of the Trust, the Court will assume 2021 is a typographical error and use the 2019 dates as reflected in the SOFA. (Bankr. ECF No. 77, at 60).

In *Crescent Resources*, this Court previously ruled that pleading insolvency by merely referencing documents from the underlying bankruptcy docket but not attaching them to the complaint does not satisfy Rule 8. *Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res.)*, No. 09-11507-CAG, 2012 WL 195528, at *14–15 (Bankr. W.D. Tex. Jan. 23, 2012).

Here, nearly one third of the alleged preferences are detailed in the SOFA. (ECF No. 10, at 6–7). The SOFA is not attached to the Amended Complaint. Unlike in *Crescent Resources* where the plaintiff merely referenced the documents and stated that the debtor was insolvent, here the Trust has plead two specific transfers referenced in the SOFA. Because the Trust here was more specific than Crescent Resources, the Court finds that the SOFA transfers satisfy Rule 8 but cautions against not attaching the supporting document.

### C.  Transfers in Exhibit B

Beyond mathematical errors, the transfers alleged in Exhibit B present yet another problem. TriCounty has consistently argued that the only indication that the transfer was of the Debtor's property was that Arete paid the "Amex"[7] bill. (ECF No. 20, at 9; *see also* Hearing Transcript, at 5–6). TriCounty's Motion to Dismiss stresses that the Trust provided no facts to substantiate the charges listed in Exhibit B. (ECF No. 20, at 9; *see also* Hearing Transcript, at 5–6). In its Response, the Trust states that "[a]ll of the expenses 'Paid by' Arete using 'Amex' were made with accounts ending in the numbers denoted" in Exhibit B. (ECF No. 23, at 10–11).

At the hearing, the Trust's Counsel explained that Exhibit B was prepared by counsel based on conversations with Johnson (*see, e.g.* Hearing Transcript, at 41–42) and that "at the very least [Counsel] should have put forth details from what [counsel] see[s] in the [Monthly Operating

---

[7] The Motion to Dismiss argues stating Arete paid by Amex is insufficient to establish a transfer of the Debtor's property because the Amended Complaint does not state that Amex is credit card or who the cardholder is. (ECF No. 20, at 9). Nothing in the Amended Complaint explains what Amex means. (*See generally* ECF No. 10).

Reports] regarding how much was a normal monthly collection period" under the Management Agreement (*Id.* at 39–40).

The Court notes that Exhibit B is not the only part of the Amended Complaint which addresses this element. Page 6 of the Amended Complaint states "Arete paid…" and "Arete made transfers…." (ECF No. 10, at 6).

Still, the Amended Complaint does not indicate that Arete used its own property to make the transfers. Simply including an exhibit of transactions that includes the Debtor's name in a "Paid by" column puts a defendant on no more notice than merely reciting the element. The Trust's failure to plead adequately is underscored by Counsel's admission on the record that the Trust possesses factual information to substantiate these claims but failed to include it in the Amended Complaint. The Court finds that the Trust did not sufficiently plead a transfer of the Debtor's interest in property to satisfy Section 548 under Rule 8's pleading standard.

**2. Benefit of a Creditor**

No dispute exists over whether the alleged payments benefitted TriCounty. The Amended Complaint alleges that Arete operated TriCounty's business affairs under the Management Agreement. (ECF No. 10, at 5, Exhibit B). The Trust further alleges that Arete paid "various vendors for or on behalf of the Defendant for the Defendant's expenses." (Amended Complaint, at 6). At the hearing, the Trust's Counsel further argued that Arete began paying for all TriCounty expenses — such as hamburgers — after Arete and TriCounty disregarded the Management Agreement. (Hearing Transcript, at 37). The Court therefore finds that TriCounty benefitted when its expenses were paid.

The Trust fails to plead this cause of action, however, because it does not sufficiently plead that TriCounty is a creditor, as explained above in Section I.d.2. The Trust has not satisfied Rule

8 on this element.

### 3.  On Account of an Antecedent Debt

A "debt" is a liability on a claim. 11 U.S.C. § 101(12). The Trust alleges that the Management Agreement created an antecedent debt. The Court adopts and incorporates its analysis above in Section I.d.2 explaining why TriCounty is not a creditor. Just as the Management Agreement did not make TriCounty a creditor with a claim against Arete, the Management agreement also did not create an antecedent debt. The Court reiterates that paying for a service does not create a claim. Without a claim, by definition, no debt exists.

Even assuming the Management Agreement created a claim, which in turn created a debt, the Trust has failed to sufficiently plead such a chain of events. All the Trust has alleged was the existence of "an antecedent debt owing to the Management Agreement" and that the "[t]ransfers was [sic] made by virtue of the antecedent debts." (ECF No. 10, at 8). Merely reciting the element is insufficient under Rule 8.

### 4.  During Insolvency

Insolvency is a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation. . .." 11 U.S.C. § 101(32) (1993). Courts refer to this as the "balance sheet test". *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 268 (Bankr. N.D. Tex. 2003). Courts employ a two-step analysis to conduct the balance sheet test. *Id.* The first step is for the court to determine if debtor was a "going concern" or, put differently, if the debtor was "on its deathbed."   The second step is for the court to value debtor's assets, based on the status determined by the first step of the analysis.  *Id.*  If a debtor is a "going concern," the court will "determine the fair market price of the debtor's assets as if they had been sold as a unit, in a prudent manner, and within a reasonable time." *Id.*  Accordingly, the Fifth Circuit has opined that the fair

18

value of property can be determined "by 'estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions.'" ***Brentwood Lexford***, 292 B.R. at 268 (citations omitted).

Here, the Trust has failed to plead that Arete's debts exceeded the value of its property at the time of the transfers. The Amended Complaint contains only a bare recitation of a legal conclusion to support the element of insolvency. Specifically, page 8, paragraph 42 of the Amended Complaint states "Plaintiff is informed and believes, an alleges there on, that each of the Transfers was made while the Debtor was insolvent."

When the Court asked about insolvency during the hearing, the Trust's Counsel admitted it did not sufficiently plead insolvency. (Hearing Transcript, at 37–38). Trust's Counsel specifically said:

> [w]e should have put in the detail that was, you know, its [sic] literally in the pleadings [of the bankruptcy] case, including in the disclosure statement. It goes into great detail on the liens, when they were incurred, and the liquidation analysis of the Debtors.

(*Id.*). Like the transfer of the debtor's property element, the Trust knows and possesses facts to sufficiently plead insolvency, but instead merely recited the elements. The Court finds that the Trust did not sufficiently plead insolvency under Rule 8.

### 5. Made within One Year because the Creditor was an Insider

Section 547 provides two different preference periods based on the status of the creditor receiving preferential treatment. If the creditor is an insider, the preference period is one year before filing the petition. 11 U.S.C. § 547(b)(4)(B). If the creditor is not an insider, the preference period is only 90 days before filing. 11 U.S.C. § 547(b)(4)(A).

The Trust alleges that the preference period is one year — between November 3, 2018 to November 3, 2019 — because it alleges that TriCounty is an insider of Arete. As explained in

19

Section I.d.1 above, whether TriCounty is an insider of Arete depends on allocation of power to vote. *See* 11 U.S.C. § 101(2)(A). The Trust has only plead ownership interest, which is distinct from voting power. *See* Tex. Bus. Orgs. Code Ann. § 101.104 (describing how the company agreement can establish voting rights). Without pleading any information about voting power, the Trust has not established that the preference period is one year under Rule 8 because it has not established that the TriCounty is an insider.

### 6. Enabling the Creditor to Receive Better Treatment than in a Hypothetical Chapter 7 Liquidation

Because the Court concludes that TriCounty is not a creditor of Arete, the Trust cannot sufficiently plead this element. TriCounty, because it is not a creditor and did not file a claim in the main bankruptcy, would receive nothing in a hypothetical Chapter 7 liquidation.

At a minimum, the Trust must have plead some facts in support of this element. For example, the Trust could have submitted a proposed liquidation analysis based on the Debtors' assets and liabilities. Here — assuming *arguendo* that TriCounty was a creditor — the Trust simply recited the element. Paragraph 44 states, "Transfers enabled Defendant to receive more than it would have if the Bankruptcy Case was filed as a Chapter 7 bankruptcy case, the Transfers had not been made, and the Defendant received payment to the extent of a Chapter 7 creditor as provided under the Bankruptcy Code." (ECF No. 10, at 8). Mere recitation of the element fails Rule 8.

### 7. Due Diligence

The Small Business Reorganization Act of 2019 amended Section 547 by adding ", based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)" after the word "may."

Pub. L. No. 116-54, § 3(a), 133 Stat. 1079, 1085 (2019). The House Report offers no explanation for the amendment. H.R. 116-171, 116th Cong., 1st Sess. (2019).

TriCounty argued that the statute, as amended, makes due diligence an element which must be plead. (ECF No. 20, at 12). The Trust responded, arguing it is unclear whether due diligence is an element and that courts have denied motions to dismiss brought on due diligence grounds. (ECF No. 23, at 9).

The Court will not reach the issue of whether due diligence is an element because the Amended Complaint fails to survive Rule 8 on other elements. Assuming due diligence is an element, what the Trust plead is insufficient. The Trust merely stated that it had performed "reasonable due diligence", "investigat[ed] into the circumstances of the case" and "[took] into account the Defendant's reasonably knowable affirmative defenses under 11 U.S.C. § 547(c)." The Amended complaint also "acknowledges that some of the transfers might be subject to defenses." If due diligence is an element, merely paraphrasing the element will not satisfy Rule 8.

Because the Amended Complaint does not sufficiently plead multiple elements of a Section 547 preference, the Court will grant the Motion to Dismiss with respect to this cause of action.

### c. Fraudulent Transfers

The Trust's Amended Complaint's "Count II" section is subtitled "(Avoidance of Fraudulent Transfers and Obligations – 11 U.S.C. §§ 544, 548, and TUFTA)." (ECF No. 10, at 9). The Amended Complaint does not identify which subsections of any of the referenced statutes the Trust alleges. *See id*. Section 548 provides for both actual and constructive fraud. *Compare* 11 U.S.C. §§ 548(a)(1)(A) *with* (B). TUFTA also differentiates between actual and constructive fraud. *Compare* Tex. Bus. and Com. Code Ann. §§ 24.005(a)(1) (West 2021) *with* (2).

Both the federal Courts of Appeals and the lower courts within this Circuit debate whether

Rule 8 or Rule 9 applies to fraudulent transfer claims. *Life Partners*, 926 F.3d at 118, 120. The Fifth Circuit has declined to answer whether the Rule 9 heightened pleading standard applies to either actual or constructive fraudulent transfers. *Life Partners*, 926 F.3d at 118, 120. Without a binding determination of which Rule applies, the Court will analyze the Amended Complaint under both pleading standards.

### 1. Actual or Constructive Fraud

The Amended Complaint does not identify whether it pleads actual or constructive fraud. The Court can infer that the Trust intended to plead constructive fraud because the Amended Complaint uses phrases such as "reasonably equivalent value" and "Debtors were … insolvent …." (ECF No. 10, at 9). At the hearing, Defendant's Counsel posited — but was not certain — that the Trust was alleging a cause of action for constructive fraud in its Amended Complaint. (Hearing Transcript, at 20). Plaintiff's Counsel did not clarify until the hearing that the Trust was, indeed, pursuing a constructive fraud theory. (*Id.* at 40). Although the Court cannot identify case law supporting its position, the Court believes the Trust must state whether it seeks relief for actual or constructive fraud. Courts and defendants should not be forced to guess which subsection of a statute a plaintiff attempts to plead.

The Court will only address constructive fraud.

### 2. Actual and Constructive Fraud under Section 548

To state a claim for relief under 11 U.S.C. § 548's actual fraud provision, the Trust must plead (1) a transfer was made of the Debtor's property; (2) the transfer was made within two years of the petition date; (3) the Debtor received less than reasonably equivalent value in exchange for such transfer. *See* 11 U.S.C. § 548(a)(1)(B)(i); *see also In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 674 (Bankr. S. D. Tex. 2009). The Trust must further plead a fourth element, but

may do so by pleading one of four things: that the Debtor (I) was insolvent at the time the transaction was made or the obligation incurred; (II) was engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; (III) intended to incur, or believed that it would incur, debts beyond the debtor's ability to pay; or (IV) made such transfer or incurred such obligation to benefit an insider under an employment contract and not in the ordinary course of business. *See* 11 U.S.C. §§ 548(a)(1)(B)(I)–(IV).

### A.  Transfer of the Debtor's Property

The Amended Complaint alleges "that the Payments described in Paragraph 25 constitute transfers of interests in property of the Debtors worth $115,528.69…." (ECF No. 10, at 9). Paragraph 25 of the Amended Complaint notably describes why the Trust asserts that TriCounty is an insider of the Debtor, rather than explaining any form of payment. (*Id*. at 5). Drawing all reasonable inferences in favor of the Trust, the Court believes Plaintiff meant to refer to Paragraph 29.

Paragraph 29 states that between "approximately November 6, 2017, and September 19, 2019, Arete paid approximately $115,528.69 to various venders for on behalf of Defendant for the Defendant's expenses ("Payments")." (*Id*. at 6). Paragraph 29 also refers to Exhibit B. (*Id*.). Exhibit B is a table with the following categories: "Vendor", "Pmt Method", "Acct. No.", "Amt Paid", "Invoice Date", and "Paid by". (*Id*.). Every transfer is alleged to have been paid by "Arete," presumably meaning the Debtor. (*See generally id*.).

The Court adopts and incorporates its analysis from Section II.b.1.C. The Trust cannot meet its pleading burden simply by including a chart with a column stating the transfers were paid by Arete because including the Debtor's name in a "Paid by" column does no more than mirror the element. The Amended Complaint must contain some factual assertion to support the chart.

Because the Court finds that the Trust did not meet its pleading burden under Rule 8 on this element, the Court also finds that the Trust failed to satisfy Rule 9's heightened standard.

### B. Transfers within Two Years of the Petition Date

The Trust plead that the Debtors collectively filed voluntary petitions for Chapter 11 bankruptcy on November 3, 2019. (*Id.* at 2). Therefore, the two-year lookback period is from November 3, 2017 to November 3, 2019. Paragraph 29 of the Amended Complaint pleads that "[b]etween approximately November 6, 2017, and September 19, 2019, Arete paid approximately $115,528.69 to various vendors for on behalf of the Defendant for the Defendant's expenses…." (*Id.* at 6). Paragraph 29 also references Exhibit B, which includes alleged fraudulent transfers between the same dates. (*Id.*).

The Court therefore finds that the Trust has plead specific dates within the two-year lookback period on which the alleged fraudulent transfers were made. This degree of specificity satisfies both Rule 8 and Rule 9.

### C. Debtor Received Less than a Reasonably Equivalent Value

In addition to the transfer of the Debtor's property during the two-year lookback period, the Trust must also plead that the Debtor received less than reasonably equivalent value for the property it transferred. 11 U.S.C. § 548(a)(1)(B)(i).

Only two sentences in the Amended Complaint reference any value received by Debtor Arete. Paragraph 20 reads: "The expenses for which the [p]ayments were made for the benefit of the defendant and had no direct benefit to Arete." (ECF No, 10, at 6). Part of Paragraph 48 states that Arete "received less than a reasonably equivalent value in exchange" for the $115,528.69 allegedly fraudulent transfers. (*Id.* at 9).

The Trust's reasonably equivalent value theory has been less than clear. The Response

attempts to clarify that the Management Agreement

> reveals that Arete was not required to pay Defendant's expenses, so Arete did not get anything in return for paying Defendant's expenses other than satisfaction of the obligation to pay Defendant its share of revenues from the Management Agreement. Therefore, Plaintiff has alleged that the expenses were to or for the benefit of Defendant and that Arete did not receive reasonably equivalent value in return for the transfers.

(ECF No. 23, at 7).

The Response also argues that Arete had an antecedent debt to TriCounty because the Management Agreement created an obligation for Arete to pay 97% (after deducting a 3% management fee) of TriCounty's accounts payable. (*Id.* at 7). The Court notes that the Management Agreement defines how Arete's quarterly fee is calculated in Article 4, Section 4.1(b). The fee calculus is complicated and amorphous without financial reports, but the Management Agreement does not state that Arete would receive a 3% fee for providing services to TriCounty. (ECF No. 10, at 19). The Management Agreement regardless provides some amount of compensation for Arete. Such compensation — sufficiently plead though attaching the Management Agreement as an exhibit — may constitute reasonably equivalent value. In other words, in an effort to plead an antecedent debt for a preference action, the Amended Complaint may have defeated its fraudulent transfer claim. The Court will not reach whether the compensation structure provided a reasonably equivalent value because the Amended Complaint cannot survive the Motion to Dismiss for the reasons expressed herein.

At the hearing, the Trust's Counsel advanced a different theory: Arete and TriCounty departed from the established relationship under the Management Agreement, and Arete began to pay for all TriCounty expenses instead. (Hearing Transcript, at 37). The Trust's Counsel made no comment regarding whether Arete continued to be compensated for paying expenses once the parties disregarded the Management Agreement.

25

While the theory presented at the hearing potentially could have provided a factual basis, it is absent from the Amended Complaint. The Amended Complaint merely says Arete "received less than a reasonably equivalent value in exchange." Such a threadbare recitation of the element will satisfy neither Rule 8 nor Rule 9.

### D. Insolvency

Section 548 requires demonstrating insolvency in one of four ways: that the Debtor (I) was insolvent at the time the transaction was made or the obligation incurred; (II) was engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; (III) intended to incur, or believed that it would incur, debts beyond the debtor's ability to pay; or (IV) made such transfer or incurred such obligation to benefit an insider under an employment contract and not in the ordinary course of business. 11 U.S.C. §§ 548(a)(1)(B)(I)– (IV).

Paragraph 49 of the Amended Complaint reads:

> Plaintiff is informed and believes, and alleges thereon, that the Debtors were (i) insolvent on the dates the Payments were made, (ii) were engaged in a business or transaction, or were about to engage in a business or transaction, for which any property remaining with the Debtors was unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

(ECF No. 10, at 9). Paraphrasing the statute is insufficient.

As explained in the Section 547 insolvency analysis, the Trust's Counsel admitted the Amended Complaint insufficiently plead insolvency despite knowing and possessing factual material to support the element. Thus, the Amended Complaint satisfies neither Rule 8 nor Rule 9 with respect to insolvency.

26

In summary, because the Amended Complaint only sufficiently plead the lookback period, the Trust has not stated a claim for relief under Section 548. The Court will grant the Motion to Dismiss with respect to this cause of action.

### 3. Constructive Fraud under the Texas Uniform Fraudulent Transfers Act

Like Section 548, the Texas Uniform Fraudulent Transfers Act ("TUFTA") also provides a remedy to avoid certain transfers made to creditors by an insolvent debtor. Tex. Bus. & Com. Code Ann. §§ 24.005, 24.006. Within a bankruptcy adversary proceeding, a trustee may avoid transfers that are avoidable under state law through 11 U.S.C. § 544(b)(1). Here, the Amended Complaint invokes Section 544 to pursue a fraudulent transfer claim under TUFTA § 24.005.[8]

To state a claim under TUFTA for a constructive fraudulent transfer, the Trust must plead: (1) a creditor, (2) a debtor, (3) the debtor transferred assets shortly before or after the creditor's claim arose, (4) lack of reasonably equivalent value for the transfers, and (5) the transferor was financially vulnerable or insolvent at the time of the transaction. Tex. Bus. & Com. Ann. § 24.005; s*ee also* **Life Partners**, 926 F.3d at 120 (citing **Janvey v. Golf Channel, Inc.**, 487 S.W.3d 560, 566, n. 21 (Tex. 2016)).

### A. A Creditor

Under TUFTA, a "creditor" is someone who has a claim. Tex. Bus. & Com. Ann. § 24.002(4). Similarly, "creditors" in bankruptcy are entities that have a claim. 11 U.S.C. § 101(10).

Here, the Amended Complaint states in paragraph 7 that the Office of the United States Trustee appointed a Committee of Unsecured Creditors in the main bankruptcy case. (ECF No. 10, at 2 (citing Bankr. ECF No. 64)). The Amended Complaint makes other vague references to

---

[8] The Trust did not cite TUFTA § 24.006, another form of a constructive fraudulent transfer, so the Court will not address it.

creditor(s). (*See, e.g.*, ECF No. 10, at 4, 6). The Court believes this is sufficient to plead the existence of a creditor under Rule 8. Simply stating that creditors existed in the main bankruptcy, however, may not be sufficient to "plead the who" with particularity under Rule 9; but the Court will not reach this issue because the Amended Complaint fails on the elements below.

TriCounty is the only alleged creditor the Amended Complaint specifically identifies. Somewhat ironically, though, the Amended Complaint pleads no facts to support that TriCounty is a creditor. The Court adopts and reincorporates its analysis in Section I.d.2 and its conclusion that TriCounty is not a creditor. The Trust therefore cannot plausibly allege that TriCounty is a creditor under Rule 8. Despite identifying a particular entity as an alleged creditor, failing Rule 8 necessitates failure of Rule 9.

## B. A Debtor

TUFTA defines a debtor as one who is liable on a claim. Tex. Bus. & Com. Ann. § 24.002(5).  A debtor, as defined by the Bankruptcy Code, is the entity concerning which a bankruptcy case is commenced. 11 U.S.C. § 101(13).

Paragraphs 5 and 6 identify Arete Healthcare, LLC, The Emergency Clinic of Floresville, LLC, and Schertz-Cibolo Emergency Center, LLC as debtors whose cases were jointly administered in the main bankruptcy. (ECF No. 10, at 2). The Court finds this is sufficient to plead the existence of a debtor under both Rule 8 and Rule 9.

## C. Transfer of Assets Shortly Before or After Creditor's Claim Arose

TUFTA defines "claim" as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Tex. Bus. & Com. Ann. § 24.002(3). Therefore, the Trust must demonstrate that a creditor had a right to payment or property that existed

28

at the time of the fraudulent transfers or that arose within a reasonable time afterwards." Tex. Bus. & Com. Ann. §§ 24.002(3), 24.005(a).

The Trust plead that TriCounty had a "'claim' … against the Debtor that arose at the time of or before the order of relief concerning the debtor owing to the Management Agreement between the Defendant and Arete." (ECF No. 10, at 6).

The Court concludes that the Management Agreement did not give TriCounty a claim against Arete for the reasons explained in Section I.d.2. The Amended Complaint identifies no other claim or when any other claim arose. (*See generally* ECF No. 10).

Because the facts as plead establish no claims against Arete, the facts cannot identify when the nonexistent claim arose. The Court cannot, therefore, determine whether the Amended Complaint plead transfers shortly before or after an illusory time. The Amended Complaint cannot survive Rule 8 or Rule 9 for this element.

## D. Reasonably Equivalent Value

The Court adopts and incorporates its Section 548 reasonably equivalent value analysis for purposes of the TUFTA claim. The Trust has done nothing more than state Arete "received less than a reasonably equivalent value in exchange" for the alleged transfer. (ECF No. 10, at 9). A threadbare recitation of the element will satisfy neither Rule 8 nor Rule 9.

## E. Financial Vulnerability or Insolvency

The Court adopts and incorporates its Section 548 insolvency analysis for purposes of the TUFTA claim. The Trust merely paraphrased the insolvency elements of Section 548 and made no attempt to plead insolvency under TUFTA's slightly different requirements. (ECF No. 10, at 9). Moreover, as addressed more fully above, the Trust's Counsel admitted on the record that the Amended Complaint did not sufficiently plead insolvency. (Hearing Transcript, at 37–38). The

Court finds that the Amended Complaint cannot survive neither Rule 8 nor Rule 9 scrutiny for this element.

Because the Amended Complaint does not sufficiently plead multiple elements of a TUFTA fraudulent transfer, the Court will grant the Motion to Dismiss with respect to the this cause of action.

### d. Section 550 Recovery of Avoidable Transfers

Section 550 allows a trustee, after avoiding a transfer, to recover the property or value of the property transferred. 11 U.S.C. § 550(a). In other words, the Trust must first prove a predicate avoidance action to recover. (*See id.*). Because the Trust has failed to sufficiently plead a predicate avoidance action, the Trust cannot sufficiently plead a Section 550 recovery.

### e. Brian Johnson's Release

TriCounty argues that the Amended Complaint should be dismissed as "a travesty on Brian Johnson." (ECF No. 20, at 7). TriCounty argues it is unfair to bring a claim against an entity owned by Johnson after Johnson helped fund the Plan and obtained a release. (*Id.*). At argument, TriCounty acknowledged that Johnson is not a defendant here and that TriCounty did not obtain a release. (Hearing Transcript, at 16–17). The Court will deny the Motion to Dismiss on this ground because Johnson is not a defendant.

### f. Discovery

At the hearing, the Trust asked the Court to grant the Trust leave to take a Bankruptcy Rule 2004 examination of the Debtor to acquire the information the Trust needs to further amend should the Court grant the Motion to Dismiss. (*See, e.g.*, Hearing Transcript, at 26–28, 31–32, 43). The Trust specifically asked for leave to take discovery after acknowledging that some elements were insufficiently plead. (*Id.* at 43). The Trust's Counsel stated the following on the record:

> But I will concede that -- and I'll let the Court tell me exactly what it feels is insufficient, but I believe that some of these things, some of the details of the transfers, we would actually be better off if we could get some level of discovery on those points before we have to file the [Second] Amended Complaint. And we'd seek leave for that if at all possible from the Court.

(*Id.*).

The Court asked the Trust's Counsel what provisions of the Rules allow discovery to ascertain facts needed to amend a complaint. (*Id.* at 32). The Trust admitted courts do not permit "discovery under 2004 once an adversary is commenced." (*Id.*). The Trust suggested that discovery would be appropriate under the circumstances because the Trust believes Johnson is being obstructive. (*See id.* at 31–32).

Bankruptcy Rule 2004 allows examination of any entity. Fed. R. Bankr. P. 2004(a). Many courts have noted the Rule allows for a "fishing expedition" because the scope extends to any matter affected administration of the estate. ***First Fin. Savs. Ass'n v. Kipp (In re Kipp)***, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (quoting ***In re GHR Energy Corp.***, 33 B.R. 451, 453 (Bankr. D. Mass.1983)); Fed. R. Bankr. P. 2004(b).

Once an adversary proceeding is initiated, parties must use the discovery devices established in Bankruptcy Rules 7026 through 7037, which incorporate Federal Rules 26 through 37. ***Kipp***, 86 B.R. at 491; Fed. R. Bankr. P. 7026–7037. Bankruptcy Rule 2004 examinations are inapplicable to adversary proceedings in this jurisdiction. Local Rule 2004(a). Therefore, the Trust's request for leave to conduct discovery is denied.

## III. Leave to Amend

Bankruptcy Rule 7015(a)(2) declares that the "court should freely give leave [to amend a complaint] when justice so requires." In the absence of undue delay, the plaintiff's bad faith or dilatory motives, or repeated failure to cure deficiencies by previously allowed amendments, or

where amendment would be futile, the Court should grant leave freely. ***Foman v. Davis***, 371 U.S. 178 (1962).

When a claim is subject to dismissal under Federal Rule 12(b)(6) for failure to state a claim, "courts often afford plaintiffs at least one opportunity to cure pleading deficiencies . . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." ***Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,*** 313 F.3d 305, 329 (5th Cir. 2002).

The Trust has already amended its complaint once. (*Compare* ECF No. 1 *with* ECF No. 10). The Court also notes that the Trusts' Response did not request leave to amend; the Trust only sought an opportunity to cure deficiencies at the hearing. Hearing Transcript, at 32; *see generally* Response.

The Court will grant leave to amend to plead with respect to all causes of action in accordance with this Order within 14 days of the date of entry of this Order. The Court will grant no more opportunities to amend.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss under FRCP 12(b)(1) for Lack of Subject Matter Jurisdiction and Motion to Dismiss under FRCP 12(b)(6) Plaintiff's Amended Complaint ("Motion to Dismiss") (ECF No. 19) is DENIED.

IT IS FURTHER ORDERED that the Trust's request to conduct discovery is DENIED.

IT IS FURTHER ORDERED that the Trust is GRANTED leave to amend its complaint in accordance with this Order within 14 days of entry of this Order.

# # #